FILED

12/06/2022

Clerk of the
Appellate Courts

# THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs November 1, 2022

## RAYMOND WATISON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 16-04907    James M. Lammey, Jr., Judge**

_____

### No. W2022-00069-CCA-R3-PC

_____

The Petitioner, Raymond Watison, appeals from the Shelby County Criminal Court's denial of his petition for post-conviction relief from his conviction for first degree premeditated murder. On appeal, the Petitioner contends that the post-conviction court erred by denying relief on his claims alleging that he received the ineffective assistance of trial counsel. The Petitioner argues that counsel was ineffective by (1) failing to keep out hearsay evidence at the suppression hearing regarding how the Petitioner was established as the suspect, (2) insufficiently challenging the probable cause determination in this case, (3) not calling necessary witnesses at the suppression hearing, and (4) failing to make contemporaneous objections at the trial. Additionally, the Petitioner argues that the post-conviction court erred by entering a written order that contained no findings of fact or conclusions of law. We reverse the post-conviction court's judgment and remand the case for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed;**
**Case Remanded**

KYLE A. HIXSON, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and J. ROSS DYER, JJ., joined.

James Shae Atkinson, Memphis, Tennessee, for the appellant, Raymond Watison.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Amy P. Weirich, District Attorney General; Greg Gilbert and Shelby Patrick, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## I.  FACTUAL AND PROCEDURAL HISTORY

In January 2018, a jury convicted the Petitioner of first degree premeditated murder for the shooting of the victim, Juan Jackson. *State v. Raymond Watison*, No. W2018-00552-CCA-R3-CD, 2019 WL 4165282, at *1 (Tenn. Crim. App. Aug. 30, 2019), perm. app. denied (Jan. 17, 2020). The Petitioner received a life sentence. *Id.* The Petitioner appealed, arguing that (1) the trial court erred by not suppressing his two police statements because the police lacked probable cause, (2) the trial court erred by not excluding a witness's Tennessee Rule of Evidence 404(b) testimony about prior altercations between the Petitioner and the victim, (3) the State engaged in prosecutorial misconduct during closing argument, and (4) the cumulative effect of the errors entitled the Petitioner to a new trial. *Id.* On appeal, this court affirmed the Petitioner's conviction.

The Petitioner filed a pro se petition for post-conviction relief. Appointed counsel filed an amended petition, and a post-conviction hearing was held on December 26, 2021. The Petitioner alleged that he received the ineffective assistance of counsel.

At the post-conviction hearing, trial counsel testified that he represented the Petitioner. Counsel said that he met with the Petitioner at the jail and that his investigator also met with the Petitioner. Counsel said that these meetings lasted for approximately 45 minutes to one hour. Counsel said that he reviewed the Petitioner's charges and the discovery materials with the Petitioner. Counsel explained that the State's theory was that the Petitioner and Tierra Patterson were driving through a neighborhood, the Petitioner saw the victim walking, the Petitioner exited the car holding a shotgun, and the Petitioner shot the victim and fled the scene. Counsel said that he did not recall challenging the probable cause determination that the Petitioner shot the victim.

Counsel testified that he filed a motion to suppress two statements the Petitioner made to officers and that during the suppression hearing, counsel learned that there were additional witnesses. Counsel explained that he then moved to suppress evidence related to an officer's testimony regarding a 9-1-1 call and his testimony that neighborhood witness statements, which identified the Petitioner as the shooter, were collected. Counsel stated that the officer said that there were several people in the neighborhood and near the crime scene. Counsel explained the officer said that the Petitioner was present at the scene and that officers took statements from these witnesses, and it was through these eyewitness accounts that the officers determined the Petitioner was the shooter. Counsel said that following the suppression hearing, the trial court denied the motion to suppress the Petitioner's statements to police. Counsel said that he also made a motion to have the trial continued, but the court denied that motion. Counsel said he filed a Rule 10 appeal, but that was also unsuccessful.

Trial counsel identified a copy of the crime scene investigation report related to this case. Counsel said that the document inferred that there were no witnesses to the victim's shooting; however, the document was changed shortly before trial to indicate that there were witnesses to the shooting. Counsel said that the document did not have much effect on the defense strategy, which was self-defense. Counsel explained that the defense theory was that the victim had made death threats to multiple people in the neighborhood; that on the night of the shooting, the Petitioner believed the victim had shot towards him; and that the Petitioner shot back in self-defense.

Trial counsel testified that he hired an investigator to work on the Petitioner's case. Counsel said that every person the Petitioner named and every person who became relevant during the review of the discovery was investigated. He said that during this process, approximately eight or nine people were interviewed. Counsel said that initially Ms. Patterson gave a recorded statement to an investigator but that she refused to cooperate when counsel and a new investigator attempted to conduct a follow-up interview. He explained that she gave her initial statement before counsel was assigned to the Petitioner's case, that her statement was recorded and given to him, and that her statement was helpful and used in the Petitioner's defense. Counsel said that a few of the individuals he attempted to interview were uncooperative.

Trial counsel testified that the hired investigator interviewed Antwan Walker, who provided information that the victim had repeatedly made death threats against the Petitioner, that the victim was mentally unstable, and that the victim had a history of violent interactions related to his mental health. Counsel said Mr. Walker's statement corroborated the Petitioner's self-defense claims. Counsel explained that the Petitioner said the victim had fired a gun at the Petitioner's mother's house and that the investigator interviewed Officer Braxton to obtain information regarding this incident. Counsel said that Officer Braxton did not remember the Petitioner or an incident in which someone fired a gun at the Petitioner's mother's house. Counsel said that the investigator interviewed Regina Blakely, the victim's aunt. Counsel said that Ms. Blakely discussed the victim's mental health and his related aggression. Counsel said her testimony supported the defense theory that the victim had violent tendencies. Counsel said that the investigator interviewed Shirley Jackson and that she provided information regarding the Petitioner's mental health. Counsel said that Ms. Jackson indicated the victim was not as aggressive as others she knew.

Trial counsel identified the original affidavit of complaint and the subsequent affidavit of complaint, which contained additional handwritten comments. Counsel said that he recalled seeing the original affidavit and the affidavit of complaint with the handwritten comments in the discovery materials and that he discussed the documents with the Petitioner. Counsel explained that he thought the subsequent affidavit was improper because the original affidavit was dated and signed by a judge but that the documents did not change anything in his representation of the Petitioner. Counsel said that it was clear

-3-

that an officer had written a note on the subsequent affidavit but that he never learned which officer wrote the note. Counsel said that he did not recall having a specific hearing regarding the subsequent affidavit but that he addressed it at trial during the officers' cross-examinations. Counsel said that the affidavits were not discussed at the suppression hearing.

Trial counsel testified that he spoke with Dontray Robertson. Counsel recalled that Mr. Robertson gave a statement to the investigator. Counsel said that Mr. Robertson corroborated the fact that the victim had "some mental instability." Mr. Robertson said that the victim was known in the area for "not being right in the head" and having erratic behavior, occasionally claiming gang affiliation when he was not affiliated with any gangs. Counsel explained that Mr. Robertson said there was conflict between the Petitioner and the victim and that Mr. Robertson believed he needed to intervene in the conflict. Counsel said that he planned to use Mr. Robertson's testimony to establish that there was a serious conflict between the Petitioner and the victim based on the Petitioner's belief that the victim wanted to kill the Petitioner. Counsel explained that during the trial, the State called Mr. Robertson to testify about the Petitioner's having gone to the victim's home or place of work, while possessing a gun, to confront the victim about their conflict. Counsel said that he was able to cross-examine Mr. Robertson and emphasize that the Petitioner attempted to deal with the conflict with the victim rather than waiting on the victim to leave and confronting him with a gun. A transcript of Mr. Robertson's interview was entered as an exhibit.

Trial counsel testified that he did not recall the Petitioner's having received a guilty plea offer from the State. Counsel explained that self-defense was always the defense strategy. Counsel said that he discussed with the Petitioner whether the Petitioner should testify at the trial and that he asked the trial court for a self-defense jury instruction.

Trial counsel testified that Ms. Patterson's trial testimony was inconsistent with her initial statement to the defense investigator. Counsel explained that Ms. Patterson was the State's primary witness and that she implicated the Petitioner in premeditated murder. Counsel explained that Ms. Patterson was also charged in connection with the victim's death and that it was apparent, based on his experience in cases with codefendants, the State would likely reduce or dismiss her charges if she testified at the trial. Counsel said that Ms. Patterson had not received an official offer from the State at the time of the Petitioner's trial.

Trial counsel testified that he objected to evidence the State introduced during its rebuttal. He said that during a jury-out hearing, he argued that the State's introduction of the Petitioner's two statements and the 9-1-1 call log was not rebutting any defense testimony and that the evidence was improper. Counsel said that the Petitioner's first statement denied all involvement in the victim's death and that the second statement

admitted participation in the victim's death but explained it was self-defense. Counsel said that, despite his objection, the State's evidence was entered into evidence.

Trial counsel testified that he did not represent the Petitioner on appeal. He explained that he discussed the appeal with the Petitioner and attempted to represent the Petitioner. Counsel said that the Petitioner declined and insisted on representing himself on appeal.

On cross-examination, trial counsel confirmed that an anonymous 9-1-1 caller contacted an investigating officer and provided the officer with information that the Petitioner was the victim's shooter. Counsel said that the officer could not provide the caller's name, social media pages, or any other identifying information about the anonymous caller. Counsel explained that this was the basis of his motion to continue the trial, which the trial court denied.

The Petitioner testified that he received the discovery related to his case and that he discussed the discovery with trial counsel. The Petitioner explained that he had an issue with how trial counsel handled the officer's testimony that the Petitioner was the primary suspect based on hearsay. The Petitioner explained that counsel was unable to establish the identities of the anonymous caller or the witnesses from whom the caller obtained information about the Petitioner.

The Petitioner testified that he gave two different statements regarding the victim's death. The Petitioner said that he wanted to challenge the voluntariness of his statements but that this was unsuccessful.

The Petitioner testified that he challenged the validity of the affidavit of complaint. He explained that when he was represented by a public defender, and before he was represented by trial counsel, he filed a pro se motion to suppress the affidavit. The Petitioner explained that there were two affidavits of complaint, and one had handwritten notes. He said the handwritten note indicated Ms. Patterson identified the Petitioner as the victim's shooter. The affidavit with the handwritten note was entered as an exhibit.

The Petitioner testified that he heard trial counsel's hearing testimony and that he was unaware that counsel had spoken to different witnesses. The Petitioner said that he was aware that Ms. Patterson's statement to the defense investigator was inconsistent with her trial testimony. The Petitioner said that before trial counsel represented him, he had filed a motion to compel the State to disclose the "existence and substance of promises and leniency or preferential treatment." The Petitioner said that the State responded and said that there were no agreements with any potential witnesses, but the Petitioner reasoned that the State had given Ms. Patterson an agreement "automatically." He said that he told counsel about this deal but that nothing further happened. The Petitioner identified a copy of Ms. Patterson's testimony from the Petitioner's trial, a copy of the transcript of Ms.

Patterson's guilty plea hearing, and a copy of the judgment in Ms. Patterson's case. The Petitioner said that he received these documents after his conviction and filed a writ of error coram nobis based on newly discovered evidence.

The Petitioner testified that he and trial counsel discussed whether he should testify at the trial. The Petitioner said that he told counsel he did not want to testify and that it was his decision not to testify.

The Petitioner said that he had an issue with how probable cause was established in his case. He explained that the initial affidavit of complaint explained that the officer learned from an anonymous source that the Petitioner shot the victim. The Petitioner said that the second affidavit had a handwritten note saying that Ms. Patterson identified the Petitioner as the victim's shooter and that this was the basis for the probable cause. The Petitioner said that Ms. Patterson testified at the trial that the Petitioner shot the victim twice in the back. The Petitioner explained that this was untrue and that trial counsel did not object to this testimony. He said that a pathologist testified that it was possible the victim was shot in the back but that counsel did not object to this testimony.

The Petitioner testified that during closing argument, the State used "bits and pieces" of evidence and argued that the Petitioner jumped out from behind some bushes and shot the victim in the back. The Petitioner said that counsel did not object to the State's argument but that counsel did argue the State was relying on "bits and pieces." The Petitioner testified that he did not receive any guilty plea offers from the State.

On cross-examination, the Petitioner said that he shot the victim twice in self-defense. The Petitioner agreed the discovery materials revealed that the victim did not have a weapon but said that the discovery was not completely accurate.

At the conclusion of the hearing, the post-conviction court made the following oral findings:

> But when [trial counsel] was up here, I was, like, what exactly is it they say you didn't do? I still haven't really found that out. So I know that [counsel] was very conscientious of [the Petitioner] and trying to protect his rights and investigated the case. He brought up every issue that should have been brought up. He objected to everything that should have been objected to. We had hearings. We had [a] . . . motion to suppress. I guess the only complaint I would think [the Petitioner] would have had that's really without merit, [counsel] wasn't able to convince me of various things that I ruled against him.
>
> Other than that, I really didn't see any deficient performance at all. Without deficient performance, we can't really get to the second prong of the

two-prong test, whether he was prejudiced from that deficient performance. I don't know. I guess if [the Petitioner] had taken up [counsel's] offer to help him on appeal, maybe something else would have come up. I don't know.

So based upon what I've heard today, there's no deficient performance and because of that, there's no prejudice. Assuming that there were deficient performances in something, I don't see how [the Petitioner] was prejudiced at all. So for those reasons, I'll let the record reflect that I don't believe that to be so and the petition for post[-]conviction relief is denied.

In a written order filed on December 6, 2021, the post-conviction court incorporated its oral findings from the hearing but made no further findings. This appeal followed.

## II.    ANALYSIS

On appeal, the Petitioner contends that the post-conviction court erred by denying his four claims of ineffective assistance of counsel. Specifically, the Petitioner argues that trial counsel was ineffective for (1) failing to keep out hearsay evidence at the suppression hearing regarding how the Petitioner was established as a suspect, (2) failing to properly challenge the probable cause determination that led to the issuance of his arrest warrant, (3) failing to call necessary witnesses during the suppression hearing, and (4) failing to make necessary objections during the trial. Additionally, the Petitioner argues that the post-conviction court erred by entering a written order that contained no findings of fact or conclusions of law. The State responds that the court did not err by concluding that the Petitioner received effective assistance of counsel and that the court's order is sufficient to allow for meaningful appellate review.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *see Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980); *Dellinger v. State*, 279 S.W.3d 282, 293 (Tenn. 2009). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89. When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. *Rhoden v. State*, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." *Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008) (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

The burden in a post-conviction proceeding is on the petitioner to prove allegations of fact by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(1); *see Dellinger*, 279 S.W.3d at 293-94. "Questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Id.* Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id.* at 457.

As a threshold issue, we must first address the Petitioner's contention that the post-conviction court erred by failing to make sufficient findings of fact and conclusions of law. When determining the merits of a post-conviction petition, the Post-Conviction Procedure Act requires the post-conviction court to make written findings of fact and conclusions of law. A trial court's final disposition of a petition for post-conviction relief "*shall* set forth in the order or a written memorandum of the case all grounds presented, and shall state the findings of fact and conclusions of law with regard to each such ground." Tenn. Code Ann. § 40-30-111(b) (emphasis added); *see also* Tenn. Sup. Ct. R. 28, § 9(A). The use of the word "shall" clearly indicates the Tennessee General Assembly intended that the duty of

the post-conviction court to make findings of fact is mandatory. *Donald Mays v. State*, No. W2003-02761-CCA-R3-PC, 2004 WL 2439255, at *6 (Tenn. Crim. App. Oct. 28, 2004). Not only do the post-conviction court's findings of fact facilitate appellate review but, in many cases, they are necessary for such review. *Id.* Where the post-conviction court fails to make "a clear and detailed finding of fact," either orally or on the record, the appellate court is "at a complete loss to know the basis of the trial judge's decision and judgment; assignments of error and appellate review are seriously frustrated if not completely thwarted by lack of a definitive finding of fact by the trial judge." *Brown v. State*, 445 S.W.2d 669, 671 (Tenn. Crim. App. 1969).

Here, the post-conviction court incorporated its hearing findings into its written order denying the Petitioner relief. At the hearing, the court made general findings that trial counsel "brought up every issue that should have been brought up" and "objected to everything that should have been objected to." The court found that counsel was "conscientious" of the Petitioner's rights and investigated the case. The court noted that a suppression hearing was held and that the Petitioner's only complaint might be that counsel was unsuccessful in changing the court's mind regarding "various things." However, the court did not meet the requirements of Tennessee Code Annotated section 40-30-111(b) because it failed to state its findings of fact and conclusions of law with regard to the Petitioner's specific grounds for relief. The "absence of findings of fact and conclusions as to all issues prevents this court from discharging its duties of appellate review." *Darrell A. Cooper v. State*, No. E2019-02132-CCA-R3-PC, 2020 WL 6112987, at *7 (Tenn. Crim. App. Oct. 16, 2020) (remanding case because the post-conviction court failed to make any findings of fact and conclusions of law with respect to the issues raised).

We take this opportunity to point out that "findings of fact" are the post-conviction court's opportunity to fulfill its responsibility to sort through all the evidence and set forth what actually happened, as opposed to just each witness's version of what happened. *See Charles Bradford Stewart v. State*, No. M2015-02449-CCA-R3-PC, 2017 WL 2645651, at *14 (Tenn. Crim. App. June 20, 2017). Without sufficient factual findings and conclusions of law, we are unable to properly address the merits of Petitioner's claims. *See, e.g.*, *Casey Colbert v. State*, No. W2019-00383-CCA-R3-PC, 2020 WL 2394141, at *16 (Tenn. Crim. App. May 12, 2020); *Steven Tyler Nabi v. State*, No. M2017-00041-CCA-R3-PC, 2018 WL 1721869, at *4 (Tenn. Crim. App. Apr. 9, 2018) (both reaching a similar conclusion).

### III. CONCLUSION

Accordingly, the judgment of the post-conviction court is reversed, and this case is remanded for the post-conviction court to enter a written order that complies with Tennessee Code Annotated section 40-30-111(b) and Tennessee Supreme Court Rule 28, section 9(A).

_____
KYLE A. HIXSON, JUDGE